```
        IN THE UNITED STATES DISTRICT COURT FOR THE
             EASTERN DISTRICT OF NORTH CAROLINA
                       WESTERN DIVISION
                    No. 5:07-HC-2032-FL


UNITED STATES OF AMERICA,     )
                              )    PETITIONER'S
            Petitioner,       )    PROPOSED FINDINGS OF FACT
                              )    AND
       v.                     )    CONCLUSIONS OF LAW
                              )
MIKEL JAMES BOLANDER,         )
                              )
            Respondent.       )
```

The United States seeks to civilly commit Respondent, Mikel James Bolander, as a "sexually dangerous person" under Section 302(4) of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, Title 111, § 302(4), 120 Stat. 587, 620-22 (2006), codified at 18 U.S.C. §§ 4247-4248.

In order to commit Respondent, the government must prove by clear and convincing evidence that he is "sexually dangerous." Under the Adam Walsh Act, a person is sexually dangerous if he "has engaged or attempted to engage in sexually violent conduct or child molestation and . . . is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). In order to determine that a person is sexually dangerous to others, a court must find that the person "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. § 4247(a)(6).

The government must therefore prove by clear and convincing evidence that (1) Respondent has engaged or attempted to engage in sexually violent conduct or child molestation; (2) Respondent suffers from a serious mental illness, abnormality, or disorder; and (3) that as a result of such serious mental illness, abnormality or disorder, Respondent would have serious difficulty refraining from sexually violent conduct or child molestation if released.

The evidentiary hearing in this matter was held on January 19, 2011. At the hearing, the government presented testimony from Dr. Christopher North, Dr. M. Lela Demby, Dr. Andres Hernandez, and Respondent. Respondent presented testimony from Dr. John Warren. The parties admitted several exhibits into evidence, most pursuant to stipulation by the parties.

The government proposes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. Procedural History

On February 9, 2007, the government filed, with respect to Mikel James Bolander, a Certification of a Sexually Dangerous Person pursuant to the civil commitment provisions of 18 U.S.C. § 4248. (D.E. # 1). Counsel was appointed and several motions to dismiss were filed (D.E. ## 13, 20, 24, and 77) advancing various theories. These motions were denied without prejudice.

-2-

On December 19, 2011, the Court set this case for trial during the January 17th, 2012 term of court.

**B.    Respondent's Personal and Family Data**

Mikel James Bolander was born in Minnesota on January 19, 1964. He is 48 years old. His parents were married and living together at the time of his birth but divorced when he was 16 years old. His father was reportedly an alcoholic and physically abusive to his mother. Respondent's mother has since remarried and lives in California. Mr. Bolander has one younger sister. [Ex. 5, 3123-3124.]

Mr. Bolander told the probation officer that he had a happy childhood and good relationships with his parents and sister. [Ex. 13, 973-973.] He said he grew up in a typical middle class family. Id. He denied ever being molested. He was reportedly a good student and earned his GED in 1982. Id.

Respondent and his sister lived with their mother following their parents' divorce. Id. He had infrequent contact with his father. Respondent reportedly got along well with his stepfather and his family has remained supportive of him throughout his time in custody and in the community. [Ex. 5, 3123-3124.]

Mr. Bolander earned minimum wage as a cook in various restaurants between the ages of 15 and 17. Id. He enlisted in the Navy on January 18, 1983, at the age of 18 years old and was stationed in San Diego. [Ex. 2.] He worked in data processing and

-3-

attained a rank of E-3 before receiving an honorable discharge towards the end of 1985 or early 1986. [Ex. 5 and 29.]. According to the 2001 probation violation report, Mr. Bolander admitted he tried to purchase a boy prostitute in the Philippines while he was in the Navy. [Ex. 13.] Apparently pornographic material involving boys was found in his footlocker and this led to the discharge from the Navy. [Ex. 13 and 28.]

After his discharge from the Navy, he remained in San Diego and got a night job as a computer operator. [Ex. 28.] He continued in this capacity until being arrested in 1989 for Lewd and Lascivious Acts with a Child under the age of 14 and Employment of a Minor to Perform Prohibited Acts. _Id_. After paroling in 1992, he went to college and studied computer programming. [Ex. 5.] He maintained a 3.37 GPA and completed 36 units before withdrawing in the Fall 1994. _Id_.

**C. Respondent's Criminal and Sexual History**

In December 1988, at age 24, Mr. Bolander was charged with six counts of Child Molestation and two counts of Possession of Child Pornography. [Ex. 26.] In a plea bargain, he pled guilty to one count of Performing a Lewd and Lascivious Act with a Child Under the Age of 14. Mr. Bolander sexually abused a 10-year-old male for approximately a year before being apprehended. [Ex. 13.] Reportedly, the arrest was the result of Mr. Bolander's failed attempt at enticing two other children in this family system to

-4-

engage in sexual behavior with him. <u>Id</u>. The sexual abuse consisted of fellatio, anal intercourse (on two occasions), and the production of pornography featuring the victim. <u>Id</u>. These videos were traded with other pedophiles. [Ex. 6.] During a deposition in October of last year, the Respondent noted that the minor males had requested to stay at his home. [Ex. 29.] It is clear that Mr. Bolander's actions constituted a pattern of sexually predatory behavior including targeting victims, grooming, maintaining the victim's compliance, etc.

While incarcerated in the California Department of Corrections, Mr. Bolander was treated at the Atascadero State Hospital in the Sex Offender Treatment and Evaluation Program. While in treatment, Mr. Bolander stole a substantial amount of pornographic stimulus material from the program (this material portrayed nude and semi-nude juvenile males engaged in a variety of sexual acts). He was arrested by the investigative unit at the hospital in June 1991, for Burglary and Receiving Stolen Property.

Following his release from the California Department of Corrections on May 4, 1992, Mr. Bolander was required to complete outpatient sex offender therapy for one year. While completing the required therapy, he stayed with his mother at her residence.

While on California state parole, suspicion arose as to the Respondent's activities due to his resistence to continued therapy. A search of his home found computer disks that contained child

pornography, letters indicating the importing and exporting of child porn including how to ship it, pornographic videos featuring minor males, a copy of the video made by Mr. Bolander of him performing sexual acts with the minor male who was the subject of the 1988 conviction, magazines, posters and books featuring nude boys and child pornography.

Based on the results of this search, Mr. Bolander's parole was revoked and he was returned custody. In 1996, he pled guilty to the charge of Possession of Child Pornography and received a 37-month sentence.

On August 19, 1998, a five-count federal Indictment was filed against Mr. Bolander and a co-defendant in New York. Mr. Bolander was named in three counts of the Indictment. On October 22, 1999, he pled guilty to one count of mailing child pornography to the man in New York and was sentenced to 12 months federal custody with credit for time served [Ex. 13, 963]. He was placed on three years of supervised release.

In April of 2001, while serving supervised release, his probation officer again became concerned with Respondent's compliance with supervised release conditions including participation in sex offender treatment [Ex. 15]. As a result, the probation officer conducted a search in May of 2001. The search of Mr. Bolander's residence found the following: 1) a computer opened to a file labeled "Two Boys Jacking;" 2) two external hard-drives

and a compture hard drive that contained a categorized collection of child pornography of approximately 170-200 gigabytes of child pornography; 3) evidence of a second phone line and unauthorized internet access; and 4) evidence of participation in internet newsgroups that catered to pedophiles. Id. at 118. All of this occurred while the Respondent was undergoing sex offender treatment. Court records noted that this was the largest seizure of child pornography recorded in San Diego County at the time and that the number of images if printed out and stacked upon each other would be double the size of the Empire State Building. Id. at 118. Accordingly, the Respondent was charged with violating the terms of supervised release and was sentenced to 60-months in the custody of the Federal Bureau of Prisons and 36-months supervised release.

**D.   Respondent's Mental and Emotional Health**

Mr. Bolander has demonstrated a repeated pattern of sexual arousal to prepubescent boys. He has five convictions of sexual offenses against children including molestation and production of child pornography. [Ex. 2]. He has reoffended every time that he was on supervision, and his most recent conviction indicated that he was distributing child pornography. He has continually stated that he has no interest or desire to establish intimate relationships with adults, and harbors no sexual arousal for adult partners. [Ex. 5, 18]. He endorses pro-pedophilic beliefs that

-7-

post the benefits of adult-child sexual interactions, and has participated in pedophilic internet chat-rooms and newsgroups that support these beliefs. Additionally, he has stated in treatment that he would continue to molest young boys if he could avoid the legal sanctions. [Ex. 18 at 841]. He blamed his young male victim for the molestation, and stated that the boy was responsible for enticing and soliciting him. Finally, although he has demonstrated remorse for his past activities, his pedophilic preoccupation dominates his thinking with regard to social relationships. [Ex. 4].

Mr. Bolander has never developed any kind of serious, committed relationship with an adult partner. He has repeatedly indicated that he is not interested in such a relationship. He appears to be exclusively attracted to prepubescent boys. He has generally been a loner and, in fact, described as "schizoid" by some evaluators (uninterested in close relationships). He was diagnosed with Schizoid Personality Disorder by M. Lela Demby, Ph.D. [Ex. 5.]

**E.   Evaluation of Dr. Christopher North**

1.   Dr. Christopher North is a licensed psychologist, who has evaluated numerous sex offenders to determine whether they meet criteria for civil commitment as sexually dangerous/violent persons. His curriculum vitae is Exhibit 1.

2.   Dr. North's forensic evaluation of Respondent, dated

March 14, 2011, is Exhibit 2 and his updated forensic report dated October 17, 2011, is Exhibit 3. Dr. North opined, both in his evaluation report and during his testimony, that Respondent met the criteria for civil commitment under the Adam Walsh Act. Id. At 3187. In forming his opinion, Dr. North considered the voluminous documents referenced in his reports as well as other evidence. Such evidence included information related to Respondent's criminal history, medical history, social history, substance abuse history, institutional adjustment, and other records related to Respondent. Dr. North also considered the forensic evaluations of Dr. M. Lela Demby and Dr. John Warren. [Ex. 3 at 3188-3189].

3.    Dr. North determined that Respondent had previously engaged in child molestation. Dr. North referenced Respondent's sexual offense convictions and investigatory records, other official records, Respondent's admissions, and his institutional behavior, in support of this conclusion. [Ex. 3].

4.    Dr. North opined that Respondent suffers from Pedophilia, Male Exclusive type. Dr. North opined that pedophilia, a mental disorder listed in the DSM-IV-TR, is Respondent's primary diagnosis, and he explained the basis for his diagnosis [Ex. 3, 3170-3172]. Dr. North states while "He essentially lacks any internal prohibitions against engaging in sexual activity with a child." [Id., 3186].

5.    Dr. North initially opined that there is some evidence to

support a diagnosis of Schizoid Personality Disorder (Rule Out), however, after interviewing the Respondent; he determined that there was insufficient evidence to maintain that diagnosis. [Id.].

6. In determining whether Respondent would have serious difficulty refraining from sexually violent conduct, Dr. North did use several risk tools that have at least a moderate degree of accuracy. The risk tools used by Dr. North place Respondent in the comparison group of offenders with a moderate-high to high risk of reoffending. [Ex 3, 3183].

7. Dr. North used three actuarial risk assessment tools, the STATIC-99 Revised (STATIC-99R), the STATIC-2002R, and the MnSOST-R, to assist him in assessing Respondent's risk to sexually reoffend in the future. All three of the above tools are supported by empirical research to have moderate accuracy in predicting the risk of future sexual re-offense by sex offenders and are widely used by professionals in conducting risk assessments of sex offenders. [Ex. 2, 3183-4].

8. Dr. North scored Respondent with a score of 6 on the STATIC-99R, a 7 on the STATIC 2002-R, and a 6 on the MnSOST-R. The STATIC-99R and MnSOST-R scores place Respondent in the high and moderate risk levels for being charged with or convicted of a sexual offense, while the 2002-R places him in the moderate-high risk category. [Ex. 2, 3182].

9. Individuals in the non-routine norms sample group of

sexual offenders, to which Respondent was compared, that scored from a 6 to an 8 on the STATIC 99R are estimated to sexually reoffend at a rate of approximately 31 percent in 5 years of release and 42 percent within 10 years. Individuals in the sample group to which Respondent was compared that scored a 7 on the STATIC 2002-R, are estimated to sexually reoffend at a rate of 29 percent within 5 years of release and 40 percent within 10 years. Individuals in the sample group to which Respondent was compared that scored an 11 on the MnSOST-R are estimated to reoffend at a rate of 20 percent within 6 years. [Id.].

10. In addition to the static risk factors set forth above, Dr. North reviewed relevant dynamic risk factors in assessing Respondent's risk for sexual reoffense, [Ex. 2, 3183-3185]. A dynamic risk factor refers to something that has the capacity to change over time, for example with treatment, [Id.]. Dr. North's factors contained in the STABLE-2007, a dynamic risk assessment instrument, to determine the presence of any dynamic risk factors in Respondent's case. The presence of dynamic risk factors increases an offender's risk. [Id.].

11. Dr. North considered the following dynamic risk factors: (1) significant social influences, (2) intimacy deficits, (3) sexual self-regulation, (4) cooperation with supervision, and (5) general self-regulation Id. Dr. North did not opine as to Respondent's current significant social influences. Dr. North

determined that intimacy deficits are a significant risk factor for Respondent, as demonstrated, in part, by the fact that he has never established or maintained a committed, reciprocal relationship with a partner that was not abusive. [Id., 3184]. Dr. North indicated that Respondent's sexual self-regulation is difficult to evaluate, but that it would appear that it is completely compromised when he abuses alcohol. [Id.]. Dr. North opined that Respondent's cooperation with supervision while confined has been fair, but is abysmal while on probation/parole supervision, as demonstrated by his history of supervised release violations while in the community. [Id.]. Dr. North also determined that Respondent's general self-regulation is minimal due to his pedophilic interest. [Id.]. He further opined that his general self-regulation will be poor to non-existent given his lack of interest in abstaining from engaging in activities that feed into his pedophilic desires. [Id.].

12. Dr. North also considered the following three factors that are considered protective because they decrease the risk of further sexual reoffending: (1) having been in the community without sexually reoffending; (2) having less than 15 years left in the offender's time at risk due to illness or physical conditions that significantly decrease the motivation and/or ability to sexually reoffend, and (3) very advanced age, [Id., 3186]. Dr. North concluded that none of these factors are present for

-12-

Respondent. [Id.]. Although it has been more than 10 years since his last "hands on" conviction, it should be noted that his "obsession" with child pornography has placed him in positions where there was considerable risk to children. Id. In fact Dr. North notes that according to his probation report, an eight year old boy was living near the Respondent, a knowing violation of his probation terms and an act that places him at extreme risk of reoffense. Id.

13. Based on the overall risk scales applicable to Respondent and other factors, Dr. North opined that Respondent is at high risk for sexual re-offense. [Id., 3187].

**F.    Evaluation of Dr. M. Lela Demby**

1.    Dr. M. Lela Demby is currently employed by the Bureau of Prisons as a forensic psychologist. Her curriculum vitae is Exhibit 4. Dr. Demby's Forensic Evaluation report of Respondent, dated May 4, 2007, is Exhibit 4 and an updated report dated march 9, 2011, is Exhibit 5.

2.    Dr. Demby's report addresses Respondent's developmental history, relationship history, education history, employment history, substance abuse history, non-sexual criminal history, sexual criminal history, psychiatric/psychological history, mental health history, medical history, her diagnostic impressions, her use of actuarial instruments and her opinion regarding Respondent's sexual dangerousness. Because Respondent refused to participate in

-13-

a clinical evaluation with Dr. Demby, she was not able to interview Respondent as part of her evaluation [Ex. 5].

3.    Dr. Demby made the following diagnoses: (1) Pedophilia, Sexually Attracted to Males, Exclusive and (2)Schizoid Personality Disorder. Dr. Demby explained the bases for each of her diagnoses and opined that each qualify as serious mental illnesses, abnormalities, or disorders in this case. Id. at 3139. Further, she opined that as a result of these diagnoses, Respondent would have serious difficulty in refraining from sexually violent conduct. [Id. at 3149].

4.    With regard to the Pedophilia diagnosis, Dr. Demby explained that Respondent meets that diagnosis based, in part, on his recurrent and intense sexually arousing fantasies, sexual urges and actions involving prepubescent males. Further, she opined that the following evidence shows he constructed his lifestyle to obtain maximum exposure to young children and child pornography, even while on supervised release.    Id. at 3146.    He engaged in sophisticated techniques to avoid financial disclosure of his activities to his probation officers.    Id.    She noted specifically that treatment providers have reported that he has demonstrated little guilt or remorse for his crimes, except for self-focused regret concerning the negative consequences he has endured.    In spite of efforts at treatment, he has continued to engage in sexually inappropriate attraction to young boys even when the

-14-

threat of detection and sanctions are high, as indicated by his discharge from the military, his theft of sexual stimuli in Atascadero State Hospital, and his numerous revocations of supervised release. [Id. at 3140].

5. With regard to the diagnosis of Schizoid Personality disorder, Dr. Demby states that it can adversely impact Respondent's volitional control and exacerbates his pedophilic interest. Id. The diagnosis of Schizoid Personality Disorder is demonstrated by adolescent behaviors that continue into adulthood, and take the form of detachment from social relationships and a lack of desire for intimacy. Id. Mr. Bolander's personality disorder is evidenced by his preference for social isolation since adolescence, his preference for solitary occupations involving computers with little interaction with people, his lack of desire for intimate and social relationships, and his reliance on the Internet for socially distant interactions with others. [Id. at 3140-41]. She further opined that Respondent's psychopathy is a risk factor to be considered for future sexual actions. Due to Mr. Bolander's diagnoses of Schizoid Personality Disorder and his marked lack of empathy for his victims, psychopathy is a clinical issue that warrants investigation. [Id.].

6. Dr. Demby utilized the STATIC-99R to assess Respondent's risk of sexual re-offense. She scored Respondent with an 8 on the STATIC-99R. In considering the applicability of dynamic risk

factor's in this case, Dr. Demby opined that Respondent's lack of cooperation with supervised release conditions may increase his risk of re-offense. [<u>Id.</u> at 3134].

7.    Based on the above and as set forth in her report, Dr. Demby opined that Respondent meets the criteria for civil commitment under the Adam Walsh Act. [<u>Id.</u>].

**G.    Evaluation of Respondent's Examiner, Dr. John Warren**

1.    Dr. John Warren is a psychologist. His qualifications are set forth in his curriculum vitae. [Respondent's Ex. 1, 2].

2.    Dr. Warren's forensic evaluation of Respondent is dated July 25, 2011.

3.    During the hearing of this matter, Dr. Warren testified that Respondent did not meet criteria for civil commitment as a sexually dangerous person under 18 U.S.C. 4248. Dr. Warren opined that Respondent's history of completion of sentencing for conviction of Possession of Child Pornography (a previous conviction for one, sexually-related contact offense and two other child pornography (one possession, one mailing) offenses constituted child molestation, thus, satisfying the first criteria necessary for civil commitment under 4248.    <u>Id.</u> at 5.  Dr. Warren also referenced several other acts by Respondent while in custody including being dismissed from sex offender treatment and stealing pornographic materials from the Atascadero State Hospital. [<u>Id.</u> at 4-5].

-16-

4. Dr. Graddy diagnosed Respondent as suffering from Pedophilia, Males, Non Exclusive, the sexual arousal to a pre-pubescent child or children. In opining this he noted that the Respondent has historically been attracted to males and male children, has engaged in sexual acts with a male child twenty-two years ago, and has been a consumer of child and homosexual pornography.

5. Dr. Warren performed an actuarial assessment of Mr. Bolander's risk of sexual recidivism. Dr. Warren opined that Mr. Bolander's verifiable history was reviewed and points were assessed using the Static 99R. Based upon his history, his score was 6 placing him into the "high" risk group. His particular score was compared to those in the routine correctional normative group. As a group the sexual recidivism rate has been reported as 14.7% in five years. [Id., 5].

6. Dr. Warren offered no opinion as to whether Respondent's mental illness will cause him serious difficulty in refraining from child molestation in the future, but acknowledged that Respondent's past history while on supervised release and participation in treatment gave a guarded prognosis. [Id. 11-13].

7. Dr. Graddy opined that Respondent requires a higher level of accountability and supervision that is available without commitment. [Id., 7].

-17-

## III. CONCLUSIONS OF LAW

**A.    Respondent has engaged in or attempted to engage in sexually violent conduct or child molestation.**

1.    The government has established by clear and convincing evidence that Respondent has engaged in or attempted to engage in the following sexually violent conduct:

    a.    On February 15, 1989, Respondent was convicted of one count of California Penal Code Section 288(a), Lewd Act with a Child Under 14 and was sentenced to a 72-month term of state imprisonment.

    b.    On November 28, 1996, while on state parole for the above crime, Respondent was convicted of one count of possessing child pornography and sentenced to a 37-month term of imprisonment in federal prison (Case No. 96-0431-T).

    c.    On August 19, 1998, a five-count federal Indictment was filed against Respondent and a co-defendant in New York. Respondent was named in three counts of the Indictment. October 22, 1999, while in federal prison, Respondent was convicted of distribution of child pornography to a man in New York while he was in the community on state parole. Respondent was sentenced to a 12-month term of imprisonment with credit for time served

and ordered to serve three years of supervised release.

d.    On February 7, 2002, Respondent was convicted of violating the conditions of probation for his previous two child pornography convictions and sentenced to a 60-month term of imprisonment for Possession of Child Pornography in violation of Title 18, United States Code, Sections 2252(a)(4)(b) (Criminal Docket No. 01CR2864-T (S.D.CA)).

e.    On February 11, 2002, Respondent was sentenced to 18-months in federal prison on four probation violations for his 1998 conviction. He was sentenced to 8-months federal custody to run consecutive to the 60-month sentence for the new conviction and to the 9-month sentence on his other probation violation for a total term of 77-months.

Although convicted of only one hands on child molestation offense against his 1988 victim, the evidence, particularly Respondent's admissions, reveals that Respondent sexually assaulted that victim on other occasions as well. Accordingly, the government has met its burden on the first element.

**B.    Respondent is "sexually dangerous" to others.**

1.    The government has established by clear and convincing

-19-

evidence that Respondent suffers from a serious mental illness, abnormality or disorder in the form of Pedophilia, Male Exclusive.

2.    Given the record, including the forensic evaluation reports of all three experts in this case, statements and admissions of Respondent, as well as the documentary evidence in this case, Respondent meets the criteria for Schizoid Personality Disorder.  The evidence reveals that Respondent still suffers from pedophilic urges, fantasies or behaviors to engage in sexually violent conduct against prepubescent males. This is supported by his verbal admissions which are consistent with, and supported, by the record as well as his history of sexual assault against prepubescent males and possession of child pornography for his own sexual gratification. Such urges, fantasies or behaviors are sexually deviant and meet the criteria for Pedophilia as defined by the DSM-IV-TR.  The record further supports the conclusion that Respondent's Pedophilia diagnosis is "serious" such that it meets the second element under 4248.

3.    Given the record, including the forensic evaluations of the experts in this case, Respondent also meets the criteria for Schizoid Personality.  The record, including the reports and testimony of all three experts in this case, supports the conclusion that Respondent suffers from Schizoid Personality which, in Respondent's case, is "serious" such that it meets the second element under 4248.  Regardless, as stated by Dr. Demby, the

-20-

combination of Respondent's Pedophilia and Schizoid Personality Disorder acting together, are a serious mental illness, abnormality or disorder that meets the second element of 4248.

4. Second, the government has established by clear and convincing evidence that as a result of his serious mental illnesses, abnormalities or disorders, Respondent would have "serious difficulty in refraining from sexually violent conduct . . . if released."

5. The government must show that Respondent's difficulty will be "serious." Merely the presence of an urge or fantasy to engage in child molestation is insufficient to meet this prong of the test for civil commitment if the person the government seeks to commit has developed skills necessary to overcome such urge or fantasy without difficulty. See United States v. Carta, 2011 WL 2680734, slip op., at *22 (D. Mass. July 7, 2011).

6. The government, however, need not establish that the person it seeks to commit will, or is likely to, reoffend. See United States v. Hunt, 643 F.Supp.2d 161, 179-81 (D. Mass. 2009). Instead, the analysis focuses on Respondent's volitional control understood in relation to his mental illness. Carta, at *22. This determination requires more than relying on recidivism rates of past offenders, but requires analysis of a range of different factors, including Respondent's history before incarceration, his time in prison, and the opinions of experts. Id.

7. The determination of this prong of the analysis is informed by the constitutional constraints on the civil commitment scheme. Carta, at *23. In Kansas v. Crane, 534 U.S. 411 (2002), the Supreme Court held that in order to civilly commit someone for sexual dangerousness, "there must be proof of serious difficulty in controlling behavior." Id. at 413. This standard allowed courts wide discretion in relying on a number of different factors relevant to sexual dangerousness. Carta, *23. The standard did not have "any kind of narrow or technical meaning;" nor was it demonstrable with "mathematical precision." Crane, at 413.

8. The final analysis must not be just whether Respondent exhibits traits shared by recidivists. Carta, at *23. Rather, Respondent's volitional control must be "viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself. . . [in such a way that] distinguish[es] [him] from the dangerous but typical recidivist convicted in an ordinary criminal case." Id.

9. The evidence in this case, including Respondent's recent admission that he is sexually dangerous, his documented history of sexual offending and alcohol abuse, his failure to refrain from such conduct despite prior sanctions for such conduct, his failure to attend and complete recommended counseling and treatment, and his repeated failure to comply with the conditions of his supervised release, supports the conclusion that Respondent would

-22-

have "serious difficulty in refraining from sexually violent conduct . . . if released."

10.   Despite some previous periods of mental health treatment, when released to society, Respondent has continued to reoffend by engaging in acts of child molestation.

11.   As recently as October, 2011, while detained at Butner, post-Certification, Respondent has stated that he feels that the minors who were the victims of his 1988 assault were willing participants in his sexual scheme. [Ex. 29 at 23.] Further, he has stated that photos of nude males under the age of 12 did not qualify as pornography in his eye unless the child had an erection and was engaged in sexual acts. <u>Id.</u> at 37.

12.   Respondent's lack of self-control is exacerbated by his antisocial attributes and lack of desire to change his sexual interests. Moreover, Respondent appears to have little to no ability to manage his mental illnesses.

13.   Respondent should be committed to the custody of the Attorney General until he is no longer a sexually dangerous person under the Adam Walsh Act.   It is hereby ORDERED that Mikel James Bolander be committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4248.

Respectfully submitted, this 18th day of January, 2012.

THOMAS G. WALKER
United States Attorney

BY: /s/ Edward D. Gray
EDWARD D. GRAY
Attorney for Petitioner
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: edward.gray@usdoj.gov
N. C. Bar# 37539

CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon counsel for Respondent, by electronically filing the foregoing with the Clerk of Court this date, January 18, 2012, using the CM/ECF system which will send notification of such filing to the above.

BY: /s/ Edward D. Gray
EDWARD D. GRAY
Attorney for Petitioner
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: edward.gray@usdoj.gov
N. C. Bar# 37539

-24-